**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TROY G. SAXTON,**

             **Petitioner,**                    **Case No. 2:21-cv-4019**
     **v.**                               **Judge Sarah D. Morrison**
                                     **Magistrate Judge Kimberly A. Jolson**

**WARDEN, NOBLE CORRECTIONAL
INSTITUTION,**

             **Respondent.**


**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This case has been referred to the Undersigned pursuant to 28 U.S.C. § 636(b) and Columbus' General Order 14-1 regarding assignments and references to United States Magistrate Judges.

This matter is before the Court to consider the Petition (Doc. 1), Respondent's Return of Writ (Doc. 9), Petitioner's Traverse (Doc. 12), and the state court record (Doc. 8).  For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED.**

**I.  BACKGROUND**

On August 25, 2017, in case number 17CR4696, a Franklin County, Ohio Grand Jury returned a six-count Indictment charging Petitioner with multiple drug offenses.  Specifically, Petitioner was charged with one count of possession of cocaine as a major drug offender (MDO) in violation of Ohio Revised Code § 2925.11, a first-degree felony (count one); one count of possession of heroin as a MDO in violation of R.C. § 2925.11, a first-degree felony (count two);

one count of aggravated possession of drugs in violation of R.C. § 2925.11, a fifth-degree felony (count three); one count of possession of cocaine in violation of R.C. § 2925.11, a first-degree felony with an accompanying one-year firearm specification (count four); one count of possession of heroin in violation of § 2925.11, a second-degree felony, with an accompanying one-year firearm specification (count five); and one count of having a weapon while under disability in violation of R.C. § 2923.13, a third-degree felony (count six).

The charges against Petitioner followed the execution of two search warrants in January 2017.  One warrant related to a search of 2100 Courtright Road, an auto-body shop co-owned by Petitioner, and the other related to Petitioner's residence at 6144 Stornoway Drive.  It is the two counts of possession of cocaine (counts one and four), and the two counts of possession of heroin (counts two and five) that are at issue in this case.

The Ohio Tenth District Court of Appeals summarized the facts of the case as follows:

On November 28, 2017, Saxton filed a motion to suppress, arguing the officers lacked probable cause to obtain the two search warrants. Specifically, Saxton argued the warrant for 2100 Courtright Road lacked sufficient particularity; the affidavit in support of the search warrant did not establish a nexus between 6144 Stornoway Drive and illegal activity; that the information in the search warrant affidavit had become stale; that the affidavit was deliberately or recklessly misleading; and that officers did not rely on the warrant in good faith. The state opposed the motion, and the trial court set the matter for a hearing.

At the suppression hearing on May 17, 2018, the state introduced copies of the search warrants for both Courtright Road and Stornoway Drive and the affidavit used to obtain both search warrants. The affidavit was signed by Detective Earl Grinstead of the Whitehall Police Department. In it, Detective Grinstead averred that four separate informants had contacted the narcotics unit of the Whitehall Police with information regarding a large-scale narcotics trafficking operation occurring at the auto body shop located at 2100 Courtright Road. The informants implicated Saxton and Malcolm Sunderland, the co-owners of the body shop, as well as other individuals associated with the body shop.

The affidavit further stated that based on the information from the informants, Whitehall police set up surveillance of 2100 Courtright Road and observed Saxton regularly come and go from the west door of the body shop. Police observed Saxton

drive a GMC Yukon registered in his daughter's name, and a records check revealed Saxton's daughter had criminal cases in 2010 and 2014 involving drugs and a cash seizure of over $40,000. Detective Grinstead averred in the affidavit that throughout the course of the surveillance, police officers witnessed a "constant flow" of traffic from both pedestrians and vehicles and interactions that resembled drug transactions in the parking lot of the body shop.

Detective Grinstead further averred that police checked Saxton's name and the 2100 Courtright Road address through their records system, and both had been "flagged" by the high intensity drug trafficking area task force ("HIDTA"). Specifically, the affidavit stated that a March 2016 investigation found Saxton "responsible" for the distribution of "multiple kilograms of cocaine" at the 2100 Courtright Road location. (Aff. in Support of Warrant to Search at 2.) The 2016 investigation also linked the location of 6144 Stornoway Drive to Saxton, which HIDTA investigators believed to be Saxton's residence. The HIDTA investigation allowed HIDTA agents to identify several "source dealers" linked to Saxton, and HIDTA agents recovered $36,000 in cash that Saxton had given to a source dealer for a kilogram of cocaine. (Aff. in Support of Warrant to Search at 3.) Detective Grinstead then averred in the affidavit that an "indictment for conspiracy to distribute is pending against Troy Saxton" as a result of the HIDTA investigation. (Aff. in Support of Warrant to Search at 3.)

The affidavit also stated that on January 2, 2017, Whitehall police officers set up a controlled buy of crack cocaine at 2100 Courtright Road using an informant. The informant successfully purchased crack in the parking lot of the body shop from a person named Nick. Further, the affidavit stated that within 72 hours prior to the affidavit, Whitehall police officers instructed an informant to arrange a controlled buy of cocaine from Saxton at the body shop at 2100 Courtright Road.  Prior to the transaction, officers witnessed Saxton arrive at the body shop and enter through the west door. A few minutes later, officers observed Saxton come back outside, meet the informant in the parking lot, and escort the informant back inside the body shop. The informant successfully purchased cocaine while inside the body shop.

Following the controlled drug transaction, the affidavit stated Whitehall officers followed Saxton to 6144 Stornoway Drive where he parked his vehicle in the "designated parking spot" for that address and entered the apartment through the rear door. (Aff. in Support of Warrant to Search at 5.) Detective Grinstead averred that he believed the proceeds from the drug transaction would be at Saxton's residence along with drugs and drug-related assets. Additionally, Detective Grinstead noted that the prior HIDTA investigation "shows [Saxton] in and out of [6144 Stornoway Drive] prior to and after suspected drug transactions." (Aff. in Support of Warrant to Search at 5.) Finally, the affidavit noted Saxton's prior criminal history includes several convictions for drug-related offenses, as well as convictions for domestic violence and assault.

* * *

Following the hearing, the trial court denied Saxton's motion to suppress in a May 31, 2018 decision and entry. Specifically, the trial court found both search warrants were valid and contained probable cause to search both the body shop on Courtright Road and the apartment on Stornoway Drive. * * *

Subsequently, on June 18, 2018, Saxton entered pleas of no contest to all six counts of the indictment.  At the plea hearing, the state provided the following facts: when police apprehended Saxton, he had $635 in cash on his person as well as pills in his jacket pockets and in the console of his vehicle. The search of Stornoway Drive yielded approximately 267 grams of cocaine, 36 grams of heroin, 2,000 grams of "brick-sized" cocaine, another 830 grams of heroin, digital scales, and a drug press. (June 18, 2018 Tr. at 7-8.) Additionally, the search of Courtright Road yielded 68 grams of cocaine, 45 grams of heroin, a digital scale, a notebook with names and addresses, 31 individually wrapped pills, 3 grams of crack cocaine, and a loaded pistol in a crate in the mechanic's bay of the body shop. The trial court accepted Saxton's plea, found him guilty of all six offenses, and sentenced him to an aggregate prison term of 18 years, journalizing his conviction in a November 1, 2018 judgment entry.

*State v. Saxton*, No. 18AP-925, 2019 WL 6974455, *1-3 (Ohio App. 10th Dist. Dec. 19, 2019).

Following the denial of Petitioner's motion to suppress, Petitioner entered a no contest plea to all six counts of the Indictment.  The trial court sentenced Petitioner to an aggregate prison term of eighteen years.  Specifically, the trial court sentenced Petitioner to eleven years as to both counts one (possession of cocaine) and two (possession of heroin), to run concurrently.  The court sentenced Petitioner to an additional seven years—twelve months on count three (aggravated possession of drugs), three years plus a one-year firearm specification on count four (possession of cocaine), and two years on count five (possession of heroin)—to run consecutively to each other and count one.  The court sentenced Petitioner to twelve months imprisonment on count six (weapon under disability) to run concurrently to count one.  (Doc. 8, at PAGEID # 100.)

Petitioner took a timely appeal, raising three assignments of error:

First Assignment of Error:  The trial court erred in denying defendant-appellant's motion to suppress heroin, cocaine, and a firearm seized by law enforcement officers pursuant to search warrants that were issued and executed in violation of

4

his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

Second Assignment of Error:  The trial court's failure to merge the two counts of possession of cocaine and the two counts of possession of heroin violated defendant-appellant's rights under the double jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution, and Article 1, Section 10 of the Ohio Constitution.

Third Assignment of Error:  Defendant-appellant was denied his right to the effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution.

On December 19, 2019, the Tenth District Court of Appeals affirmed the judgment of the trial court.  *State v. Saxton*, No. 18AP-925, 2019 WL 6974455 (Ohio App. 10th Dist. Dec. 19, 2019).

Petitioner sought review by the Ohio Supreme Court.  On April 28, 2020, the Ohio Supreme Court declined to exercise jurisdiction and dismissed the appeal.  *State v. Saxton*, 158 Ohio St.3d 1488 (2020).

## II.  HABEAS PROCEEDINGS

On July 26, 2021, Petitioner, through counsel, filed the instant federal habeas petition, raising the following two claims for relief:

Ground One:  The state court's failure to merge multiple counts involving the simultaneous possession of the same drug violated Petitioner's rights under the Double Jeopardy Clause of the 5th/14th Amendments.
Supporting Facts:  The state prosecuted Petitioner for counts of possession of heroin and possession of cocaine in respect to quantities of each drug seized from his residence, and for additional counts of possession of heroin and possession of cocaine in respect to quantities of each drug seized from his business.  The seizures occurred on the same day.  The state court ordered that the prison terms imposed for the former (residence) pair of counts be served consecutively to the prison terms imposed for the latter (business) pair of counts.  As a consequence, Petitioner was illegally subjected to multiple punishments for the same crime.

Ground Two:  Trial counsel's failure to request merger of multiple counts involving simultaneous possession of the same drug violated Petitioner's 6th/14th Amendment right to effective assistance of counsel.
Supporting Facts:  Trial counsel failed to ask the trial judge to merge the pair of possession of heroin counts relating to the simultaneous seizures from Petitioner's

residence and business. This omission was so serious as [to] constitute constitutionally deficient performance. This omission was prejudicial. There is a reasonable probability that Petitioner would not have been subjected to multiple punishments for the same crimes if trial counsel had made a timely request for merger of the counts.

(Doc. 1, at PAGEID # 5, 7.)

On December 23, 2021, Respondent filed a Return of Writ. (Doc. 9.) Respondent argues that Petitioner's first ground for relief is procedurally defaulted, because Petitioner failed to request merger of the various counts at the time of sentencing. (*Id*. at PAGEID # 526.) The state court enforced this default, Respondent argues, by analyzing this ground for relief under a plain error standard. (*Id*.) Next, Respondent asserts that Petitioner's claim of ineffective assistance of trial counsel for failing to request merger—which is offered by Petitioner as both cause and prejudice to excuse the default of count one and as a freestanding ground for relief in count two—also lacks merit. Finally, Respondent contends that Petitioner's first ground for relief lacks merit, because the various drug offenses involved separate geographic locations and were not entitled to merger. (*Id*. at 529.)

## III. DISCUSSION

Before considering the merits of Petitioner's habeas claims, the Court must first determine whether Petitioner has cleared certain procedural hurdles. Respondent says that Petitioner has not, and that Petitioner's first ground for relief is barred by procedural default. The Court agrees.

### A. AEDPA and Procedural Default

Because this is a habeas corpus case, provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104-132, 110 Stat. 1214, apply. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA limits the circumstances under which a federal court may grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in a state

court proceeding. Specifically, under AEDPA, a federal court shall not grant a writ unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). Section 2254(d)(1) circumscribes a federal court's review of claimed legal errors, while § 2254(d)(2) places restrictions on a federal court's review of claimed factual errors.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made during the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly

presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court.  As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted."  It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test.  *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard).  First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule.  Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim.  Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error.  *Maupin*, 785 F.2d at 138.  In order to establish cause, a petitioner must show that "some objective factor external to the defense"

impeded the petitioner's efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The petitioner bears the burden of showing cause and prejudice.  *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)).

### B. Application to Petitioner's First Ground for Relief

In his first ground for relief, Petitioner argues that the state trial court violated his rights under the Double Jeopardy Clause when the court failed to merge his two convictions for possession of cocaine, and also failed to merge his two convictions for possession of heroin, which were based on separate amounts of cocaine and heroin seized from his home and business.  (Doc. 1, at PAGEID # 5.)  In essence, Petitioner contends that he should have only one conviction for possession of cocaine, based on the total weight of cocaine seized on the same day from his home and business, and one conviction for possession of heroin, also based on the total weight of heroin seized from the two locations.  Petitioner argues:

> In the direct appeal, Saxton argued that Division (C) of Ohio Rev. Code §2925.11 evinces a legislative intent to calibrate the seriousness of a controlled substance violation and the corresponding punishment according to the type of drug (*e.g.* cocaine, heroin, marijuana) and the *aggregate* quantity of drug whether or not it is stored in one or more stashes.  He maintained that a practice of charging a drug offender with multiple counts of possession of the *same* controlled substance based on the seizure of different stashes of the drug in different locations on the same day is inconsistent with this intent.

(Doc. 12, at PAGEID # 540.)  Under Petitioner's theory, because the total weight of the cocaine and heroin seized from his residence qualified him as a major drug offender and resulted in felony-one offense levels, he should not have been subject to any additional penalties for the separate amounts of cocaine and heroin seized from his body shop, which were the subject of counts four and five, and which resulted in consecutive prison time.  Basically, Petitioner wants a free pass on the body shop drugs.

Petitioner made this argument on direct appeal. But the Tenth District Court of Appeals determined that Petitioner failed to properly preserve the claim because he failed to request merger of the counts at sentencing. The court of appeals reviewed the claim for plain error:

> In his second assignment of error, Saxton argues the trial court erred in failing to merge his two cocaine possession counts and his two heroin possession counts. Saxton does not argue the possession counts for the different drugs should merge, just that the possession counts for the same drugs should merge with each other. As the state notes, Saxton did not raise any merger issue in the trial court, and thus our review is limited to plain error. *State v. Adams*, 10th Dist. No. 13AP-783, 2014-Ohio-1809, ¶ 6, citing *State v. Taylor*, 10th Dist. No. 10AP-939, 2011-Ohio-3162, ¶ 34. A trial court's failure to merge convictions on allied offenses constitutes plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

> In reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to the multiple counts statute, an appellate court reviews the trial court's R.C. 2941.25 determination de novo. *State v. S.S.*, 10th Dist. No. 13AP-1060, 2014-Ohio-5352, ¶ 28, citing *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. "'Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court.'" S.S. at ¶ 28, quoting *Williams* at ¶ 25.

> R.C. 2941.25 provides:

>> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

> Saxton argues the trial court erred when it failed to merge the offenses of possession of cocaine as a major drug offender and possession of cocaine as well as for failing to merge the offense of possession of heroin as a major drug offender and possession of heroin. "When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or

10

whether the defendant may be convicted of separate offenses." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 24.

"To determine whether two offenses are allied offenses that merge into a single conviction, a court must evaluate three separate factors: the conduct, the animus, and the import." *State v. Harris*, 10th Dist. No. 15AP-683, 2016-Ohio-3424, ¶ 42, citing *Ruff* at paragraph one of the syllabus. "If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Ruff* at ¶ 25. Ultimately, if the harm resulting from each offense is separate and identifiable, the offenses are of dissimilar import and do not merge. *Harris* at ¶ 42, citing *Ruff* at ¶ 25.

In conducting an analysis of whether two offenses are allied offenses of similar import, the Supreme Court of Ohio directs an appellate court to look beyond the statutory elements and to consider the defendant's conduct. "A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed?" *Ruff* at ¶ 25.

Here, Saxton argues we need not engage in the *Ruff* analysis because R.C. 2925.11, the possession statute, indicates a legislative intent to calibrate the punishment for the offense based on the aggregate drug weight. In support of this argument, Saxton relies on *State v. Miranda*, 138 Ohio St.3d 184, 2014-Ohio-451, which states it is not necessary to resort to an analysis under the multiple counts statute when the legislature's intent on multiplicity of indictments "is clear from the language of the [offense] statute." *Miranda* at ¶ 10. We are mindful that *Miranda* predates *Ruff*, but we nonetheless will address Saxton's argument about aggregating the quantities of drugs.

Saxton was convicted of one count of possession of cocaine as a major drug offender and one count of possession of cocaine as a first-degree felony, as well as one count of possession of heroin as a major drug offender and one count of possession of heroin as a second-degree felony. All of these offenses are violations of R.C. 2925.11. To trigger major drug offender status, which carries a mandatory 11-year prison term, an offender must possess an amount that equals or exceeds 100 grams of cocaine or 100 grams of heroin. R.C. 2925.11(C)(4)(f); R.C. 2925.11(C)(6)(f). Separately, for possession of cocaine to be a first-degree felony but without major drug offender status, an offender must possess an amount of cocaine that equals or exceeds 27 grams but is less than 100 grams. R.C. 2925.11(C)(4)(e). Additionally, for possession of heroin to be a second-degree felony an offender must possess an amount of heroin that equals or exceeds 10 grams but is less than 50 grams. R.C. 2925.11(C)(6)(d).

Saxton essentially argues that once the state is able to charge an offender as a major drug offender, all of the possession charges for that same drug must necessarily aggregate into one amount and the state cannot convict the offender of additional possession counts. However, as the state notes, the separate charges in the indictment relate to the separate searches of Stornoway Drive and Courtright Road. The amount of cocaine and heroin seized at Stornoway Drive, on its own, was enough to trigger major drug offender status for each of those drugs: more than 2,000 grams of cocaine and more than 830 grams of heroin. At a separate geographic location, Courtright Road, police then seized additional amounts of cocaine and heroin in amounts sufficient to charge Saxton with first-degree felony possession of cocaine and second-degree felony possession of heroin: specifically, 68 grams of cocaine and 45 grams of heroin. Thus, the state did not rely on aggregating the quantities of the drugs seized at the two locations in order to authorize charging Saxton as a major drug offender. Despite Saxton's *Miranda* argument, we do not read R.C. 2925.11 as evincing an intent to preclude additional possession charges once the major drug offender threshold has been reached and the offender possessed the additional drugs at a separate geographic location. Accordingly, we do not agree with Saxton that the *Ruff* analysis does not apply here.

The second prong of the *Ruff* analysis provides that offenses do not merge if the offenses were committed separately. *Ruff* at ¶ 25. Here, the amount of cocaine and heroin supporting the major drug offender charges was separately packaged, in a separate geographic location, recovered at separate times, and as a result of separate searches than the non-major drug offender possession charges. Under these circumstances, we find that the two sets of offenses were committed separately. *State v. Stoermer*, 2d Dist. No. 2017-CA-93, 2018-Ohio-4522, ¶ 27-28 (where the same drug was separately packaged and found in "two geographically separate locations" at separate times and as a result of separate searches, the two counts for possession of the same drug do not merge). Accordingly, the offenses were not allied offenses, and Saxton may be convicted and sentenced for both sets of offenses. The trial court, therefore, did not plainly err when it did not treat Saxton's two cocaine possession convictions or his two heroin possession convictions as allied offenses. We overrule his second assignment of error.

*Saxton*, 2019 WL 6974455, at *8-10.

Here, Petitioner has waived his claim that he was improperly sentenced on allied offenses of similar import in violation of the Double Jeopardy Clause because he failed to make a contemporaneous objection to the lack of merger—and failed to request merger—at sentencing. The Ohio Court of Appeals enforced that waiver by finding Petitioner failed to preserve the claim

and reviewing it for plain error only.  Ohio's contemporaneous objection rule has been explained many times.  It "requires the parties to preserve errors for appeal by calling them to the attention of the trial court at a time when the error could be avoided or corrected."  *Twyford v. Bradshaw*, No. 2:03-cv-906, 2017 WL 4280955, at *19 (S.D. Ohio Sept. 27, 2017) (Marbley, Chief D.J.).  It has been held time and again that the enforcement of this rule is an adequate and independent state ground of decision sufficient to bar federal habeas relief.  *See, e.g., Hand v. Houk*, 871 F.3d 390, 417 (6th Cir. 2017) (citing *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Failure to adhere to the firmly-established Ohio contemporaneous objection rule is an independent and adequate state ground of decision.")); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) ("Ohio's contemporaneous objection rule is a firmly established procedural rule that is an adequate and independent state ground to foreclose federal relief."); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010) (same).

The state appellate court's plain error review does not save Petitioner from this procedural default.  This is because "[a] plain error analysis is not tantamount to a review on the merits," meaning the state appellate court's review for plain error does not imply it overlooked Petitioner's procedural default.  *Scott v. Mitchell*, 209 F.3d 854, 865 (6th Cir. 2000); *see also Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (holding that plain error analysis is "viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits").  Said differently, an appellate court's alternative ruling on the merits does not remove the procedural default.  *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1076 (6th Cir. 2015); *Adams v. Wainwright*, No. 20-3646, 2022 WL 808036, *4–5 (6th Cir. Mar. 17, 2022) (citing *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003)).

In sum, Petitioner's first ground for relief is procedurally defaulted.

### C.  Cause and Prejudice

In an attempt to overcome his procedural default, Petitioner offers the ineffective assistance of trial counsel as cause and prejudice to excuse the default of his first ground for relief. (Doc. 12, at PAGEID # 545.)  Specifically, Petitioner asserts that his trial counsel was ineffective for failing to request merger and failing to object to the imposition of separate and consecutive sentences on the two counts of possession of cocaine and the two counts of possession of heroin, in violation of the Double Jeopardy Clause.  Petitioner argues his trial counsel had a duty to litigate the potentially meritorious merger claim at the time of sentencing, and counsel's failure to do so constitutes deficient performance.  (*Id*. at PAGEID # 546.)  According to Petitioner, "[t]he decision to request merger has potential upside, but absolutely no downside.  There was no tactical or strategic reason for not making the request."  (*Id*.)  This also happens to be Petitioner's second ground for relief.

To begin, "Petitioner has the burden of showing cause and prejudice to overcome a procedural default."  *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (internal citation omitted) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)).  The ineffective assistance of counsel may constitute cause for a procedural default, so long as that claim itself is not procedurally defaulted.  *See Gross v. Warden*, 426 F. App'x 349, 360 (6th Cir. 2011) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)).  Here, there is no *Edwards v. Carpenter* issue, because Petitioner raised this same ineffective assistance of trial counsel claim on direct appeal as his third assignment of error.  The Tenth District Court of Appeals considered the claim on the merits and it is properly before the Court on habeas review.

The Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* requires a petitioner

claiming the ineffective assistance of counsel to demonstrate both that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Shinn v. Kayer*, 141 S.Ct 517, 522–23 (2020). A petitioner shows deficient performance by demonstrating "that counsel's representation fell below an objective standard of reasonableness." *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (citing *Strickland*). To make such a showing, a petitioner "must overcome the 'strong [] presum[ption]' that his counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013) (quoting *Strickland*, 466 U.S. at 690). "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Strickland*, 466 U.S. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 703. Counsel is constitutionally ineffective only if counsel's deficient performance "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Because Petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, if the Court determines that Petitioner has failed to satisfy one prong, it need not consider the other. *Strickland*, 466 U.S. at 697 ("Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same

order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Here, the Tenth District Court of Appeals skipped straight to *Strickland*'s second step, concluding Petitioner failed to establish prejudice resulting from trial counsel's failure to request merger of the various counts at sentencing.  In rejecting Petitioner's claim, the court of appeals held, in pertinent part:

> Saxton contends his trial counsel was ineffective in . . . failing to request merger of the two cocaine possession counts with each other and the two heroin possession counts with each other.
>
> * * *
>
> Saxton's argument reflects the argument he made under his second assignment of error on appeal. Because Saxton's trial counsel did not raise the merger issue in the trial court, we reviewed Saxton's argument under a plain error standard, and, in disposing of that argument, we concluded Saxton was unable to demonstrate plain error. "'[W]here the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel.'" *State v. Roy*, 10th Dist. No. 14AP-223, 2014-Ohio-4587, ¶ 20, quoting *State v. Carson*, 10th Dist. No. 05AP-13, 2006-Ohio-2440, ¶ 51. Having previously held, in addressing Saxton's second assignment of error, that the trial court did not plainly err when it did not merge his convictions, we conclude Saxton's argument in this regard fails to satisfy the second prong of the *Strickland* test.  *State v. Abdullahi*, 10th Dist. No. 18AP-222, 2018-Ohio-5146, ¶ 49.
>
> Thus, because Saxton cannot satisfy the *Strickland* test, Saxton's claim of ineffective assistance of counsel must fail.

*Saxton*, 2019 WL 6974455, at *10–11.

Although the court of appeals rejected Petitioner's ineffectiveness claim on the merits, this Court conducts a *de novo* review of an ineffectiveness claim when determining whether Petitioner can establish cause for a procedural default.  *See Chase v. MacAuley*, 971 F.3d 582, 592 (6th Cir. 2020) (citing *Hall v. Vasbinder*, 563 F.3d 222, 236–37 (6th Cir. 2009) ("An argument that ineffective assistance of counsel should excuse a procedural default is treated differently than a

free-standing claim of ineffective assistance of counsel. The latter must meet the higher AEDPA standard of review, while the former need not.")). In so doing, the Court concludes that Petitioner cannot satisfy either the deficient performance or the prejudice prong of the *Strickland* test.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution affords a defendant three basic protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Brown v. Ohio* 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). The Double Jeopardy Clause was held applicable to the States through the Fourteenth Amendment in *Benton v. Maryland*, 395 U.S. 784, 794 (1969). Relevant to this case, "'[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)).

In Ohio, courts apply R.C. 2941.25, the allied offenses statute, to ascertain Ohio's legislative intent. *Jackson*, 745 F.3d at 212. The Sixth Circuit has held that an Ohio court of appeals' analysis of a double jeopardy claim that is limited to the application of R.C. 2941.25 is "entirely dispositive of the federal double jeopardy claim." *Id*. at 210. That is, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's interpretation of that state's own statutes." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013). *See also Jackson*, 745 F.3d at 211 ("What determines whether the constitutional prohibition against multiple punishments has been violated is the state legislature's intent concerning punishment."); *Scott v. Turner*, No.

20-4028, 2021 WL 1327145, *2 (6th Cir. Feb. 4, 2021) (noting that the state-court's R.C. 2941.25

determination on merger of allied offenses "is conclusive" on habeas review).

In reviewing Petitioner's merger claim for plain error, the court of appeals looked to Ohio

Revised Code Section 2941.25 and determined that Petitioner's two convictions for possession of

cocaine and the two convictions for possession of heroin were committed separately and were

subject to separate penalties. Citing *State v. Ruff*, 143 Ohio St.3d 114 (2015), the appellate court

noted that it must "look beyond the statutory elements and consider the defendant's conduct."

*Saxton*, 2019 WL 6974455, at *8. In so doing, the court opined that the separate amounts of

cocaine and heroin were seized from geographically distinct locations, and therefore did not

constitute allied offenses and did not merge:

> Saxton essentially argues that once the state is able to charge an offender as a major
> drug offender, all of the possession charges for that same drug must necessarily
> aggregate into one amount and the state cannot convict the offender of additional
> possession counts. However, as the state notes, the separate charges in the
> indictment relate to the separate searches of Stornoway Drive and Courtright Road.
> The amount of cocaine and heroin seized at Stornoway Drive, on its own, was
> enough to trigger major drug offender status for each of those drugs: more than
> 2,000 grams of cocaine and more than 830 grams of heroin. At a separate
> geographic location, Courtright Road, police then seized additional amounts of
> cocaine and heroin in amounts sufficient to charge Saxton with first-degree felony
> possession of cocaine and second-degree felony possession of heroin . . . . Despite
> Saxton's *Miranda* argument, we do not read R.C. 2925.11 as evincing an intent to
> preclude additional possession charges once the major drug offender threshold has
> been reached and the offender possessed the additional drugs at a separate
> geographic location. Accordingly, we do not agree with Saxton that
> the *Ruff* analysis does not apply here.

*Saxton*, 2019 WL6974455, at *9. This Court is bound by that determination. *See Volpe*, 708 F.3d

at 697. *See also Delgadillo-Benuelos v. Warden*, No. 2:20cv4996, 2021 WL 2291316, *10 (S.D.

Ohio June 4, 2021) (finding habeas court bound by state court determination that "the charges at

issue involve two separate offenses subject to separate penalties under Ohio law in view of the

discovery of drugs by police in separate locations at different times").

In the Traverse, Petitioner argues that the court of appeals should not have analyzed the merger issue under R.C. 2941.25 because the intent of the legislature to aggregate the drugs he possessed was "clear on the face" of R.C. 2925.11, the offense statute for possession of drugs. (Doc. 12, at PAGEID # 541). Petitioner cites *State v. Pendleton*, 163 Ohio St.3d 114 (2020), for the proposition that Ohio's drug possession statutes "provide a unique context for the application of the Double Jeopardy Clause because the statutes create different felony levels and impose different punishments 'depending on the type and amount of illegal substance upon which a criminal charge could be made.'" *Id*. at 119 (quoting *State v. Taylor*, 113 Ohio St.3d 297 (2007)).

But *Pendleton* is not instructive here for two reasons. First, *Pendleton* was decided after Petitioner's direct appeal. Second, *Pendleton* is factually and procedurally distinct. *Pendleton* dealt with the interpretation of the meaning (and the weighing) of "compound, mixture, preparation, or substance" as set forth in the statutory text of the offense statute. In that case, the defendant had a bag containing a mixture of heroin and fentanyl, and the Ohio Supreme Court considered whether the combined, total weight of all the drugs in the bag could be used to establish the individual weight of each substance detected in the mixture. *Id*. In this case, however, R.C. 2941.25 is the appropriate vehicle for determining whether merger was appropriate because the issue is whether Petitioner committed separate offenses by possessing drugs at separate geographical locations. The emphasis here is on Petitioner's conduct.

Because the Ohio Court of Appeals found that no plain error occurred where merger was not required, trial counsel was not ineffective for failing to request an improper merger, as Petitioner cannot establish the prejudice component of *Strickland*. To further analyze the issue, the Court finds that even if the merger issue was close—which it was not, given the distinct

geographical separateness of the search locations—the record in this case also does not support a finding of deficient performance on the part of trial counsel.

The *Strickland* Court cautioned that "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 687. To that end, "[c]ounsel need not pursue every possible claim or defense in order to avoid a finding of deficient performance." *Sylvester v. United States*, 868 F.3d 503, 510 (6th Cir. 2017) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (reiterating that the Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance of success" to avoid a finding of deficient performance under *Strickland*); *see also Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011) (stating that an "attorney is not required to raise a non-meritorious claim"). Rather, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (citing *Gray v. Greer*, 800 F.2d 544, 646 (7th Cir. 1986)).

The record reflects that counsel extensively litigated the search and seizure issues, seeking to suppress the evidence seized at both the body shop and Petitioner's residence. Counsel challenged the scope of the warrants and the searches, the particularity of the supporting affidavit, the description of the premises to be searched, the probable cause supporting the warrants, and staleness. (Motion to Suppress, Doc. 8, at PAGEID # 33–42; Transcript of Suppression hearing, Doc. 8, at PAGEID #389–466.) Counsel also challenged the inclusion of arguably misleading and untruthful statements within the affidavit and succeeded in having certain information excised from the search warrant affidavit. (*Id*.); *Saxton*, 2019 WL 6974455, at *6. When the motion to suppress was denied, Petitioner entered a no-contest plea to the six charges in the Indictment, with an eye towards appealing the suppression issues.

Having been unsuccessful on the motion to suppress, counsel went to work to get Petitioner a sentence towards the lower range of the twelve to forty-six years that Petitioner faced.  At the sentencing hearing, counsel highlighted Petitioner's acceptance of responsibility, noted his serious medical issues, and argued that despite Petitioner's history of a more than twenty-year involvement with narcotics, Petitioner had made many attempts to engage in legal business opportunities throughout his life in order to earn legitimate income.  (Doc. 8-3, at PAGEID # 500–02.)  Although counsel did not request merger, specifically, counsel argued for a minimum sentence, noting that all of the drugs were seized on the same date and resulted from just one investigation:

> Twelve years is a long time.  Troy is not going to get out early as the law sits now, that is 12 years mandatory.  We believe that is an ample punishment for the crimes that he's committed.  These cases – even though there is multiple counts in this indictment, this is all one investigation, this is all found on one date in time. The predominant amount of drugs were found in one location, Your Honor.

(*Id*. at PAGEID # 503.)  In sum, counsel did the best he could with the evidence against Petitioner. Although the trial court did not impose a minimum sentence, the sentence was far closer to the minimum than the maximum allowed by law, which is notable given the large quantities of drugs involved in this case, as well as Petitioner's prior criminal history.

Because the Court finds that counsel did not perform deficiently or to Petitioner's prejudice, Petitioner cannot establish cause and prejudice to excuse the procedural default of his first ground for relief.  Accordingly, the Undersigned **RECOMMENDS** that Petitioner's first ground for relief be **DISMISSED with prejudice** because it is procedurally defaulted.

### D.  Second Ground for Relief

Petitioner's second ground for relief sets forth the same ineffective assistance of trial counsel claim based on the failure to request merger that Petitioner offered as cause to excuse the default of ground one.  For the reasons already discussed, the Court finds that trial counsel did not

perform deficiently or to Petitioner's prejudice and therefore, the Undersigned **RECOMMENDS** that Petitioner's second ground for relief be **DISMISSED with prejudice**.

## IV.  CONCLUSION

For the foregoing reasons, the Undersigned **RECOMMENDS** that the Petition be **DISMISSED with prejudice.**  Further, Petitioner should not be granted a certificate of appealability, as reasonable jurists would not debate whether Petitioner's first ground for relief is procedurally defaulted or whether trial counsel was ineffective for failing to request the merger of certain counts.  *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).  The Court should certify to the Sixth Circuit that any appeal would be objectively frivolous, and therefore Petitioner should not be permitted to proceed *in forma pauperis* on appeal.

<u>**PROCEDURE ON OBJECTIONS**</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of

the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

       **IT IS SO ORDERED**.

Date: April 20, 2022            /s/ Kimberly A. Jolson
                                 KIMBERLY A. JOLSON
                                 UNITED STATES MAGISTRATE JUDGE